## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROMY R. STAMM, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-02273 |
| v. | |
| KILOLO KIJAKAZI,[1] | (MEHALCHICK, M.J.) |
| Defendant. | |

## MEMORANDUM

Plaintiff Jeromy R. Stamm ("Stamm") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). For the following reasons, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision to be **AFFIRMED.**

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On December 12, 2017, Stamm protectively filed a Title II application for a period of disability and disability insurance benefits, claiming disability beginning December 23, 2015,

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

due to spondylolysis, stenosis, lumbar degenerative disc disease, lumbosacral neuritis, arthritis in hands and back, obstructive sleep apnea, asthma, nerve pain, and chronic pain. (Doc. 14-6, at 2; Doc. 14-7, at 6). The Social Security Administration ("SSA") initially denied the application on June 23, 2017, prompting Stamm's request for a hearing, which Administrative Law Judge ("ALJ") Edward L. Brady held on October 8, 2019. (Doc. 14-2, at 34; Doc. 14-4, at 19). In written decision dated October 30, 2019, the ALJ determined that Stamm is not disabled and therefore not entitled to benefits or income under Title II. (Doc. 14-2, at 17-28). The Appeals Council subsequently denied Stamm's request for review on October 2, 2020. (Doc. 14-2, at 2).

On December 4, 2020, Stamm commenced the instant action. (Doc. 1). The Commissioner responded on May 14, 2021, providing the requisite transcripts from Stamm's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Stamm raising three principal bases for reversal or remand. (Doc. 23; Doc. 26). This matter is ripe for disposition.

II.  **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the

national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A.  ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now-familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.  JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Stamm is disabled, but whether the Commissioner's determination that Stamm is not disabled is supported by substantial evidence and was reached based on a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In his written decision, the ALJ determined that Stamm "was not under a disability, as defined in the Social Security Act, at any time from December 23, 2015, the alleged onset date, through September 30, 2018, the date last insured." (Doc. 14-2, at 28). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Stamm] did not engage in substantial gainful activity during the period from his alleged onset date of December 23, 2015 through his date last insured of September 30, 2018." (Doc. 14-2, at 19).

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §

404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to step three. Here, the ALJ found that Stamm had the following severe impairments: degenerative disc disease, post-laminectomy syndrome, arthritis, obstructive sleep apnea, asthma, and obesity. (Doc. 14-2, at 19). The ALJ further reasoned that Stamm' other diagnosed medical condition, hypertension, was not severe, as it was generally controlled using medication, and there was no evidence of major cardiac events related to high blood pressure in the record. (Doc. 14-2, at 20).

Regarding Stamm' mental impairments, the ALJ determined Stamm' history of depression was not severe, as it caused no more than a minimal limitation in Stamm's ability to perform basic mental work activities. (Doc. 14-2, at 20). The ALJ reached this finding by considering the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders - understanding, remembering, or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. (Doc. 14-2, at 20-21). The ALJ also determined Stamm's history of anxiety did not constitute a medically determinable impairment because it was established solely based on Stamm's allegations regarding symptoms and was not derived from an "acceptable medical source." (Doc. 14-2, at 21).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are

commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). The ALJ considered listings 1.02 (major disfunction of a joint), 1.04 (disorders of the spine), 3.03 (asthma), 3.09 (chronic pulmonary hypertension due to any cause), 4.02 (chronic heart failure), 12.02 (neurocognitive disorders). (Doc. 14-2, at 21-22). Here, the ALJ determined that none of Stamm's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 14-2, at 21).

   D. RESIDUAL FUNCTIONAL CAPACITY

   Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ examines all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry in which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c). Here, the ALJ found that while Stamm's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Stamm's statements concerning the intensity, persistence, and limited effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-

2, at 23).

Considering all evidence in the record, the ALJ determined that Stamm had the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a)," subject to the following non-exertional limitations:

> [Stamm] could occasionally balance and stoop; never kneel, crouch, or crawl; and never use ladders, ropes, or scaffolds. He should have avoided humidity; wetness; dusts, odors, fumes, and other pulmonary irritants; extreme cold; extreme heat; and vibration. As a result of side effects of medications, [Stamm] was limited to performing simple and routine work, generally described as unskilled.

(Doc. 14-2, at 22).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work . 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Stamm was unable to perform any past relevant work as a printing press operator. (Doc. 14-2, at 26-27).

- 8 -

Thus, the ALJ proceeded to step five of the sequential analysis. (Doc. 14-2, at 26).

   F.  STEP FIVE

   At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Stamm's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Stamm can perform. (Doc. 14-2, at 27). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Stamm can perform the requirements of occupations such as an order clerk, bench assembler, and inspector, which are occupations with open positions ranging from 151,000 to 450,000 nationally. (Doc. 14-2, at 27-28). Accordingly, the ALJ determined Stamm was not disabled at any time from December 23, 2015, the alleged onset date, through September 30, 2018, the date last insured, and denied his application for benefits. (Doc. 14-2, at 28).

   IV.  **DISCUSSION**

   Stamm advances three arguments on appeal: (1) the Commissioner under whom the ALJ issued the final decision serves a longer term than the President and is removable only for cause, in violation of the separation of powers; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ erred in rejecting Stamm's credible statements concerning his inability to work. (Doc. 23, at 3). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and that Stamm's separation of powers argument does not entitle him to a rehearing of his disability claim. (Doc. 26, 1-2).

A. THE ALJ'S DECISION IS NOT CONSTITUTIONALLY DEFECTIVE.

Stamm first asserts that the SSA's decision is constitutionally defective. (Doc. 23, at 5). Stamm alleges such because the Commissioner under whom the ALJ issued his final decision serves a longer term than the President and is removable only for cause, violating the separation of powers. (Doc. 23, at 5). The Commissioner agrees that the Social Security Act provision limiting the President's authority to remove the Commissioner without good cause, 42 U.S.C. § 902(a)(3), violated the separation of powers. (Doc. 26, at 9). However, the Commissioner argues that "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." (Doc. 26, at 9).

Stamm contends the government deprived him of a valid administrative adjudicatory process. In support of his argument, Stamm relies on the Supreme Court decisions in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). (Doc. 5, at 5). In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197. The following year, in *Collins*, the Court held a provision limiting the President to remove the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), violates the

separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 42 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

Here, Stamm argues that he was deprived of a valid administrative adjudicatory proves because, under 42 U.S.C. § 405(b)(1), only the Commissioner of SSA can make findings of fact and issue final decisions as to benefits eligibility. (Doc. 5, at 6); *see* 42 U.S.C. § 902(a)(3). Specifically, Stamm argues that:

> The ALJ's delegation of authority to hear and decide [Stamm's] claim came from Commissioner Saul and is therefore constitutionally defective. Similarly, the ALJ decided this case under regulations promulgated by Mr. Saul when he had no constitutional authority to issue those rules. Accordingly, a presumptively improper legal standard was utilized to adjudicate this disability claim at the administrative level.

(Doc. 5, at 6).

In response, the Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (Doc. 26, at 9). However, the Commissioner asserts that without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination. (Doc. 26, at 9). The Commissioner argues that in *Collins*, the Supreme Court explained even where an unconstitutional statutory removal restriction exists, a

plaintiff seeking relief on that basis must show that the restriction caused him harm. (Doc. 26, at 9).

First, the removal provision does not render the Commissioner's appointment invalid and thus, does not automatically void the ALJ's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void."). The ALJ who denied Stamm's disability claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. (Doc. 26, at 10). Rather, the ALJ was appointed by an Acting Commissioner of Social Security whom the President could remove at any time. (Doc. 26, at 10). Because an Acting Commissioner does not have the same removal restriction as the Commissioner and because the ALJ was properly appointed, Stamm's argument is not persuasive in this case. *See Collins*, 141 S. Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections); *see also Boger v. Kijakazi*, No. 1:20-CV-00331, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021) (finding that "Plaintiff's constitutional 'removal restriction' argument is likely not

- 12 -

even applicable to this case because ALJ Howard was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").[3]

Second, Stamm has not demonstrated that the unconstitutionality of 42 U.S.C. § 903(a)(3) inflicted compensable harm. *See Boger*, 2021 WL 5023141, at *3 (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *see also Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434, 2021 WL 4993944, at *9-10 (D. Or. Oct. 26, 2021) (concluding that "the authorities cited by Plaintiff in her supplemental briefing do not affect the disposition of this matter" where Plaintiff "does not allege 'the SSA Commissioner took any action that is in any way related to the ALJ's decision' or the decision by the Appeals Council.").

In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal

---

[3] Other courts determining the issue of traceability for purposes of jurisdiction have disagreed with this position as it relates to the Social Security Administration. *See Dante v. Saul*, No. 20-CV-0702, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner"), *but see Collins,* 141 S. Ct. at 1783 (noting that "we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away'" when discussing whether an acting director is a confirmed director) (quoting *Shurtleff v. U.S.*, 189 U.S. 311, 316 (1903)).

provision "inflicted harm." 141 S. Ct. at 1788-89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Collins,* 141 S. Ct. at 1774. The Third Amendment was not subject to full judicial review and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *Collins,* 141 S. Ct. at 1785, 1789. Relief is available in removal challenges only where officials subject to the challenged removal restrictions cause the alleged injuries, and where those restrictions themselves caused "compensable harm" upon plaintiffs. *Collins,* 141 S. Ct. at 1789.

By contrast, in this case, the action challenged by Stamm is the ALJ's decision denying benefits. Stamm has alleged no direct action by former Commissioner Andrew Saul ("Commissioner Saul"), and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf. Collins,* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Stamm cannot show how the President's supposed inability to remove the Commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on his specific claim. As the Commissioner points out in his reply brief, holding Stamm to a lower

bar would provide him an "unwarranted remedial windfall," in which many thousands of other disappointed claimants could receive the same relief. (Doc. 26, at 18-19). Further, Stamm has made no clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to him. The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. There is no allegation suggesting a direct nexus between the adjudication of Stamm's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Stamm's allegations merely express general dissatisfaction with the outcome of the adjudication of his SSA disability claim.

Lastly, as the Commissioner notes, several constitutional remedial doctrines support the denial of Stamm's request for a rehearing. The harmless error doctrine dictates that retrospective relief is only appropriate where a statutory provision that violates the Constitution caused the plaintiff some harm. (Doc. 26, at 20).  Here, because Stamm cannot show that the Commissioner's tenure protection affected the ALJ's decision on his claim, his request for rehearing is denied. Next, "[t]he de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Ryder v. United States*, 515 U.S. 177, 180 (1995). Here, however, the Commissioner's appointment and the appointment of the presiding ALJ were entirely proper. To hold otherwise would risk unwinding untold thousands of SSA disability determinations,

endangering the efficient and orderly adjudication of benefits by the SSA and harming the interests of those whose disability claims have yet to be adjudicated— precisely the type of "chaos" the de facto officer doctrine was designed to prevent. *Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).

Lastly, the rule of necessity states that a judge must exercise adjudicatory responsibility over a matter, notwithstanding some defect in his or her title or authority, where all other judges share the same defect. *See Philadelphia v. Fox*, 64 Pa. 169, 185 (Pa. 1870). Here, it could not have been an error for the deciding ALJ to hear Stamm's disability claim. If the Commissioner's tenure protection somehow filters down to affect one ALJ within the entire SSA, it affects all such ALJs. To hold that the assigned ALJ should have declined to adjudicate Stamm's claim for that reason would have meant that all other ALJs must decline to adjudicate as well for the same reason. Such widespread action would have left Stamm without a forum to adjudicate his claim and it would have denied him even the opportunity to qualify for benefits.

Accordingly, Stamm has not alleged any connection between the unconstitutional limit on the Commissioner of Social Security's removal and the ALJ's decision denying Patterson benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

- 16 -

B.   THE ALJ'S RFC FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Stamm argues that substantial evidence does not support the ALJ's RFC assessment. (Doc. 23, at 6). Specifically, Stamm asserts that the ALJ erroneously found that the medical opinions of record were not fully persuasive and improperly relied on his own lay interpretation of the medical records to make the RFC determination. (Doc. 23, at 7). The Commissioner contends that substantial evidence supports the ALJ's RFC because the ALJ was not required to rely on any physician's opinion or choose between the opinions of a plaintiff's physicians when formulating his RFC assessment. (Doc. 26, at 30).

The Third Circuit has ruled that the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p; *see Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr.

- 17 -

13, 2018). Applying this standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination.

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the

same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

On March 30, 2018, state agency physician Kevin Hollick, D.O. ("Dr. Hollick") reviewed Stamm's medical records. (Doc. 14-4, at 25-33). Dr. Hollick opined that Stamm was able to perform light work, except he could frequently climb ramps and stairs, balance, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds and stoop; and only needed to avoid concentrated exposure to vibrations, pulmonary irritants, and hazards. (Doc. 14-4, at 31-32). Considering this opinion, the ALJ found that the opinion of Dr. Hollick was "unpersuasive and unsupported" because the opinion was inconsistent with the medical evidence of record. (14-2, at 25). Specifically, the ALJ noted that "the medical evidence of record showed some pain, tenderness on palpation, positive straight leg raising, and range of

motion limitations, as well as a history of sleep apnea and asthma," but "the evidence did not specify that [Stamm] required limitations to hazards." (Doc. 14-2, at 25). Thus, the ALJ found that the RFC was sufficient to address Stamm's medical condition limitations. (Doc. 14-2, at 25).

On March 2, 2018, consultative examiner Ahmed Kneifati, M.D. ("Dr. Kneifati") conducted an internal medicine examination of Stamm. (Doc. 14-20, at 54). Dr. Kneifati opined that Stamm was able to perform light work; he could walk for up to 3 hours and stand for up to 4 hours; he could have occasional exposure to hazards, humidity, wetness, and extreme temperatures; he had no limitations on exposure to vibrations; he could occasionally perform all postural maneuvers; he could only occasionally operate foot controls; and he could only walk for 5 minutes at a time without interruptions. (Doc. 14-20, at 58-66). The ALJ found that the opinion of Dr. Kneifati was "unpersuasive" because the opinion was inconsistent with the medical evidence of record. (Doc. 14-2, at 25). The ALJ noted that the evidence of record did not specify Stamm required limitations to hazards. (Doc. 14-2, at 26). Further, the ALJ stated that the medical evidence of record showed that Stamm had normal strength and motor function, which supported the ALJ's RFC determination that Stamm did not require limitations on the use of foot controls. (Doc. 14-4, at 26). Thus, the ALJ found that the RFC was sufficient to address Stamm's medical condition limitations. (Doc. 14-2, at 26).

On March 10, 2019, medical expert Charles Brenner, M.D. ("Dr. Brenner") submitted a report containing his evaluation of Stamm's medical condition and limitations. (Doc. 14-25, at 38). Dr. Brenner opined that Stamm was able to perform light work, except he could

- 20 -

frequently operate foot controls with the right foot; occasionally operate foot controls with the left foot; never climb ladders, ropes, or scaffolds; occasionally perform all other postural maneuvers; never have exposure to pulmonary irritants; and have occasional exposure to all other environmental factors. (Doc. 14-25, at 38-43). Additionally, Dr. Brenner opined that Stamm does not meet or medically equal a listed impairment. (Doc. 14-25, at 46). Upon review, the ALJ found that the opinion of Dr. Brenner was "unpersuasive and unsupported" because it was inconsistent with the medical evidence of record that he reviewed in making his opinion. (Doc. 14-2, at 26). The ALJ noted that the evidence of record did not specify Stamm required limitations to hazards and that Stamm had normal strength and motor function. (Doc. 14-2, at 26). Thus, the ALJ found that the RFC was sufficient to address Stamm's medical condition limitations and that Stamm did not require limitations on the use of foot controls. (Doc. 14-4, at 26).

In this case, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. In formulating the RFC determination, the ALJ did not necessarily reject the medical opinions of Dr. Hollick, Dr. Kneifati, and Dr. Brenner, but explained that Dr. Hollick's and Dr. Brenner's opinions were "unpersuasive and unsupported" and that Dr. Kneifati's opinion was "unpersuasive" because they were inconsistent with the medical evidence of record. (Doc. 14-2, at 25-26). The ALJ explained that "the medical evidence of record showed some pain, tenderness on palpation, positive straight leg raising, and range of motion limitations, as well as a history of sleep apnea and asthma, that limited [Stamm] to performing sedentary work with additional postural, environmental, and mental limitations discussed in the above [RFC]." (Doc. 14-2, at 26).

- 21 -

However, the ALJ found that the medical evidence of record did not show that Stamm required limitations to hazards or on the use of foot controls. (Doc. 14-2, at 25-26). The ALJ recognized that Stamm had limitations, but reasonably found that they were not work-preclusive:

> Despite the findings in the objective imaging, treatment records support that the claimant's spinal impairments did not completely prevent him from performing basic work activities, although they resulted in reasonable limitations … Despite some observations of positive straight leg raising that is greater on the left side, antalgic gait, tenderness on palpation, range of motion limitations that are greater with extension and rotation, pain with range of motion, and tenderness on palpation, physical examinations reveal that the claimant was still capable of performing less than sedentary work. The record generally revealed normal sciatic tension signs in the seated position; normal symmetric strength in the bilateral lower extremities; an ability to ambulate without an assistive device; an ability to dress himself, sit, and get on and off the examination table without help; intact sensation to light touch; and normal motor function.

> (Doc. 14-2, at 24).

Thus, the ALJ's stated rationale for his "unpersuasive and unsupported" findings is the presence of contradictory medical evidence of record. (Doc. 14-2, at 25-26). This rationale speaks directly to the factor of "consistency" described in the Social Security Regulations and disputed by Stamm. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ substantiated this rationale elsewhere in his decision by discussing the physical examination findings of Stamm's physicians and the results of objective medical tests.

The ALJ discussed Stamm's physical examinations both generally and with specific reference to his degenerative disc disease, post-laminectomy syndrome, arthritis, and obesity. (Doc. 14-2, at 23-24). He explained that Stamm underwent an L5-S1 laminectomy without stabilization in January 2013 and was diagnosed with post-laminectomy syndrome of the

- 22 -

lumbar spine with lumbosacral neuritis, spondylolysis, degenerative disc disease, and spondylolisthesis of the lumbar region in March 2014. (Doc. 14-2, at 23-24; Doc. 14-8, at 25-30). According to the ALJ,  the objective imaging revealed "relatively normal upper lumbar discs," no spinal canal or foraminal stenosis, no significant spinal canal stenosis, and grossly unremarkable paraspinal soft tissues. (Doc. 14-2, at 23-24). The ALJ described Stamm's symptoms and treatment history with steroids, physical therapy, surgery, and medications. (Doc. 14-2, at 24). Thus, the ALJ found that "[d]espite the finding in the objective imaging, treatment records support that [Stamm's] spinal impairments did not completely prevent him from performing basic work activities, although they resulted in reasonable limitations." (Doc. 14-2, at 24). Moreover, the ALJ concluded that "[t]he record generally revealed normal sciatic tension signs in the seated position; normal symmetric strength in the bilateral lower extremities; an ability to ambulate without an assistive device; an ability to dress himself, sit, and get on and off the examination table without help; intact sensation to light touch; and normal motor function." (Doc. 14-2, at 24).

The ALJ also discussed the objective medical evidence of Stamm's asthma and sleep apnea. (Doc. 14-2, at 25). The ALJ explained that Stamm underwent a sleep study in May 2012 that revealed he has severe obstructive sleep apnea; however, no follow-up sleep studies were performed during the relevant period. (Doc. 14-2, at 25; Doc. 14-24, at 14). The ALJ noted that Stamm reported improved symptoms when using a c-pap machine and that "[h]is symptoms were well controlled using conservative treatment with inhalers and medication, there were no emergency pulmonary events, and physical examinations generally revealed lungs clear to auscultation with no wheezing, rhonchi, or rales." (Doc. 14-2, at 25).

Specifically, Stamm's medical records state that, regarding her sleep apnea, "[Stamm] is currently asymptomatic. No associated symptoms are reported. Current treatment includes CRAP. By report, there is good compliance with treatment, good tolerance of treatment and good symptom control." (Doc. 14-24, at 9, 14). Further, the ALJ stated that Stamm's obesity may contribute to his conditions and that Stamm successfully lost 50 pounds. (Doc. 14-2, at 25). Therefore, the ALJ concluded that "[Stamm's] generally normal lung examinations and improvement in symptoms with the c-pap machine support that he was able to perform sedentary work, except he should have avoided humidity; wetness; dusts; odors, fumes, and other pulmonary irritants; extreme cold; extreme heat; and vibration." (Doc. 14-2, at 25).

In his discussion of the record evidence, the ALJ explained why he found that the medical opinions of Dr. Hollick, Dr. Kneifati, and Dr. Brenner were "unpersuasive and unsupported" by the medical evidence of record and accounted for each of Stamm's impairments in making his RFC determination. Indeed, the ALJ explicitly noted that he considered the effects of Stamm's degenerative disc disease, post-laminectomy syndrome, arthritis, obesity, asthma, and sleep apnea in making his RFC determination and explained his imposition of additional limitations. (Doc. 14-2, at 23-25); *see Dowd v. Berryhill*, No. 3:17-CV-01589, 2018 WL 3448537, at *8 (M.D. Pa. July 2, 2018) (ALJ successfully discussed record evidence of plaintiff's impairments and explained his decision to assign medical opinion little weight because of its lack of consistency in relation to the record as a whole). The burden is on Stamm to demonstrate, by medical findings, that he has a condition which reasonably could be expected to produce the alleged symptoms that are the cause of his inability to work. *See Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). Stamm has not

pointed to medical evidence to suggest a finding that more significant limitations were warranted. *See* SSR 96-8p ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.") (emphasis added). Moreover, Stamm does not suggest any limitations for which the ALJ has not already accounted. *See Laicha v. Kijakazi*, No. 1:20-CV-00421, 2021 WL 3929739, at *9 (M.D. Pa. Sept. 2, 2021) (plaintiff "failed to indicate the additional limitations that should have been included in the RFC and fails to provide any evidentiary support demonstrating the need for additional functional limitations.").

Accordingly, the Court finds that substantial evidence supports the ALJ's RFC determination and evaluation of the medical evidence of record.

C. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S ASSESSMENT OF STAMM'S SUBJECTIVE SYMPTOM ALLEGATIONS.

Stamm argues that the ALJ erred in evaluating his subjective complaints concerning his ability to work. (Doc. 23, at 15). Stamm contends that the ALJ erred in finding inconsistency with his activities of daily living and incorrectly concluded that his ability to dress himself independently, perform light chores, prepare one meal per day, read, and watch television establishes a capacity to work at any level on a sustained basis. (Doc. 23, at 16). In response, The Commissioner argues that the Social Security Act makes clear that "[a]n individual's statements as to pain or other symptoms shall not alone be conclusive evidence of disability[.]." (Doc. 26, at 34); *see* 20 C.F.R. § 404.1529(a); 42 U.S.C. § 423(d)(5)(A). The Commissioner asserts that the RFC assessment did credit Stamm's subjective complaints "to the extent that he could not perform his past relevant work," but Stamm failed to produce

- 25 -

"evidence of limitations as would compel a finding that greater limitations were warranted." (Doc. 26, at 32).

The ALJ properly applied the new set of Social Security Regulations for evaluating medical evidence that eliminates the hierarchy of medical opinions and states that an ALJ will not defer to any medical opinions, even those from treating sources. (Doc. 14-2, at 25-26); *see* 20 C.F.R. § 404.1520c(a). In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Williams*, 970 F.2d at 1186 (plaintiff's "subjective complaints must be substantiated by medical evidence."). Subjective complaints, then, must be given due consideration, but will be evaluated in the context of objective evidence. *See* 20 C.F.R. § 404.1529(a); *see also Chandler*, 667 F.3d at 363 ("statements about your pain or other symptoms will not alone establish that you are disabled."). "To establish disability, there must be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage v. Saul*, 469 F.Supp.3d 311, 337 (M.D. Pa. 2020). A claimant's allegations alone will not establish that he is disabled. 20 C.F.R. § 404.1529.

Additionally, in evaluating the intensity and persistence of pain and other symptoms, the ALJ should consider the claimant's daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side

effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). In his brief, Stamm relies on *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981), to argue that merely the fact that Stamm can engage in daily activities does not support a finding of a lack of disability. (Doc. 23, at 16). However, the Social Security Regulations permitted the ALJ to consider Stamm's daily activities when evaluating his allegations. *See* 20 C.F.R. § 404.1529(c)(3)(i) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities"); *see also Seney v. Comm'r of Soc. Sec.*, 585 F. App'x 805, 809 (3d Cir. 2014) (affirming the ALJ's decision to consider the claimant's "daily functions, including managing her own personal care, cooking, childcare, cleaning, and shopping," when evaluating subjective complaints). So long as substantial evidence supports his conclusion, the Court should afford "great deference" to the ALJ's analysis of the claimant's subjective complaints. *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007) (affirming ALJ's RFC where ALJ concluded that plaintiff's conflicting testimony "was overstating the extent of her fatigue in an effort to bolster her claim of total disability.").

Here, the ALJ found that Stamm's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Stamm's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 14-2, at 23). Specifically, the ALJ noted that Stamm's "allegations of the  persistence and limiting effects of the symptoms of his degenerative disc disease, post laminectomy syndrome, arthritis, and obesity are not fully consistent with the

medical evidence of record," because his objective imaging shows "relatively normal upper lumbar discs." (Doc. 14-2, at 23-24). Further, the ALJ found that "[Stamm's] spinal impairments did not completely prevent him from performing basic work activities, although they resulted in reasonable limitations." (Doc. 14-2, at 24). The ALJ also stated that "[Stamm's] allegations of the persistence and limiting effects of his asthma and obstructive sleep apnea are not fully consistent with the medical evidence of record," because Stamm's records revealed, "generally normal lung examinations and improvement in symptoms with the c-pap machine support that he was able to perform sedentary work" with additional limitations. (Doc. 14-2, at 25).

Considering Stamm's activities of daily living, including dressing himself independently, performing light chores, preparing one meal per day, reading, and watching TV, the ALJ found that Stamm's "allegations of the severity and persistence of his symptoms are not fully consistent with the medical evidence of record." (Doc. 14-2, at 24). The ALJ specifically addressed findings made by each physician and examiner, incorporating their explanations into Stamm's RFC, as well as Stamm's subjective symptom allegations in formulating his RFC determination, which accounted for Stamm's mental and physical limitations. (Doc. 14-2, at 25-26). Therefore, in reconciling the contrasting medical evidence and medical opinions of record with the inconsistencies in Stamm's abilities and limitations, the ALJ concluded that Dr. Hollick's and Dr. Brenner's opinions were "unpersuasive and unsupported" and that Dr. Kneifati's opinion was "unpersuasive." (Doc. 14-2, at 25-26).

Accordingly, the Court finds that the ALJ fulfilled his duty in considering Stamm's symptom allegations and weighed them against the entire medical record. The ALJ provided

a thorough explanation for affording little weight to Stamm's symptom allegations as they were not "consistent with the medical evidence of record." (Doc. 14-2, at 24-25); *see Horodenski*, 215 F. App'x at 189. It appears that Stamm is requesting that this Court re-weigh the evidence, which this Court cannot do. *See Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.") Accordingly, the Court finds that substantial evidence supports the ALJ's consideration of Stamm's subjective symptom allegations.

V.   **CONCLUSION**

Based on the foregoing, the decision of the Commissioner is **AFFIRMED**, and final judgment is entered in favor of the Commissioner and against Stamm.

An appropriate order follows.

**Dated: December 31, 2021**                    *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **Chief United States Magistrate**